IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Petitioner,<br><br>V.<br><br>RAFAEL E. SANTOS<br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>) | CR. NO. 005-108-01S<br>CR. NO. 04-112-01ML<br>CA 06 522 |

PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. SECTION 2255

Defendant, in Pro-Se moves before this court of jurisdiction on Petition for Writ of Habeas Corpus in reference to numerous Constitutional violations and Ineffective Assistance of Counsel issues.

Defendant is not violating any terms of his plea agreement, in the plea agreement colloquy, Defendant did not waive his rights to file an appeal, collateral attack, writ or motion after sentencing including an appeal under 18 U.S.C. section 3742 or a motion under U.S.C. section 2255. The plea agreement does not indicate that Rafael Santos cannot attack his plea agreement on Constitutional grounds of being overboard.

In DANIELS, the court said that after an enhanced federal sentence has been imposed, a person sentenced may pursue any channel for Direct or Collateral review still available to challenge a conviction. DANIEL V. UNITED STATES, 532 US 374, 121 S Ct 1578, 149 L Ed 2d 590 (2001). Defendant asserts that some of the properties and personal items, e.g. jewelries forfeited to the government were illegally seized, these properties

at bar were unrelated to the crime the Defendant pled to nor were profit generated from crime used to procure the properties in question, the seizure of Defendant's personal items, e.g. jewelries were illegal. The government has since issued a letter from the Forfeiture Counsel, Drug Enforcement Administration in Quantico, Virginia, to Defendant's Counsel William J. Murphy to claim some of the Defendant's properties. But with ineffective assistance of Counsel that has plagued Defendant all along from the beginning of this case at bar. Defendant's Counsel is playing a game of cat and mouse without any response from Counsel William J. Murphy to the actual properties in question.

Defendant brought to Counsel William J. Murphy's attention his rights to appeal his sentence and conviction, Counsel told Defendant that Defendant had no rights to an appeal (regardless of what was in the Defendant's plea agreement). Defendant pressed further by expressing what the sentencing Judge had just said during sentencing in the court room of the 10 day window to file a timely appeal. Defendant told Counsel that it was his Constitutional right to appeal. There was nothing in the plea agreement colloquy that stipulates that Defendant cannot appeal his sentence.

## BACKGROUND

On September 8, 2005, the Defendant was arrested by members of the Drug Enforcement Administration (DEA). He was taken into custody and placed at the Donald W Wyatt Detention Facility, Central Falls, Rhode Island. On September 13, 2005, the Defendant appeared before US Magistrate Judge Lincoln D. Almond, for

Case 1:05-cr-00108-S-LDA Document 28 Filed 11/06/2006 Page 3 of 15

a detention hearing/initial appearance. At that time, he was ordered detained.

On October 5, 2005, a Federal Grand Jury for the District of Rhode Island returned a Four Count Indictment charging the Defendant with Conspiracy and Possession of Heroin, in violation of Title 21 U.S.C. section 841(a)(1) and (b)(1)(c) and section 846 and Title 18 U.S.C. section 2, a Class C felony (Count I - III). Count IV charges the Defendant with Criminal Forfeiture, in violation of Title 21 U.S.C. section 853.

On November 29, 2005, the Defendant appeared with counsel before the Honorable William E. Smith, US District Judge, and pled guilty to the four-count indictment.

On April 7, 2006, Defendant was hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total of 41 months on counts I, II, and III to be served concurrently with each other with a term of 3 years of supervised release.

**CONSTITUTIONAL SAFEGUARDS AND DUE PROCESS HERITAGE**

The power of punishment is vested in the legislature, not the judicial department, and it is the legislature, not the judiciary, which is to define a crime or ordain the general limit of its punishment. The legislature has great latitude in defining Criminal Conduct and in prescribing penalties of society, and the function of the legislature in this area is primary, its exercises fortified by presumptions of right and legality, and it is not to be interfered with lightly nor by any judicial conception of their wisdom or propriety.

The Due Process of the law is the primary and indispensable foundation of individual freedoms; it is the basic and essential term in the social compact which defines the rights of the individuals and delimits the powers which the state may exercise. The fundamental guarantee of due process is absolute, and not merely relative.

It is not merely a political right, but is a legal right assertable in the courts. By reason of this guarantee, everyone is entitled to the protection of those fundamental principles of liberty and justice which lie at the basis of all our Civil and Political institutions and that have long been recognized under the Common-Law system, and which are not infrequently designated as the **"Law of the Land."**

In evaluating a due process claim, a Court must determine whether a property or liberty interest exists, and, if so, what procedure is Constitutionally required to protect that right. When a particular Bill of Rights provision has been made applicable to the States by the Fourteenth Amendment, and provides an explicit textual source of Constitutional protection against a particular sort of government behavior, that Amendment and not some mere generalized notion of substantive due process must be the guide for analyzing claims. Due process expresses a requirement of fundamental fairness. Applying the Due Process Clause is an uncertain enterprise which must discover what fundamental fairness consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.

The term **"Due Process of Law"** asserts a fundamental principle

of justice, rather than a specific rule of law, and thus is not susceptible of more than a general statement of its intent and meaning, which are ascertained in the history or its specific applications to Cases requiring Judicial decisions. The primary guide in determining whether a principle is a fundamental principle of justice protected by the Due Process Clause is historical practice.

The rule that what free people have found consistent with their enjoyment of freedom for centuries is not to be deemed to violate due process does not freeze due process within the confines of historical facts or discredited attitudes, it being of the very nature of a free society to advance in its standards of what is deemed reasonable and right. The Court usually have contented themselves, in ascertaining the intent and application of this important phrase, with the process of judicial inclusion and exclusion as the Cases presented for decision have arisen. The real clue to the problem confronting the judiciary in the application of the Due Process Clause is not to ask where the line is once and for all has been drawn, but to recognize that it is for the Court to draw it by the gradual and empiric process of inclusion and exclusion. Due process is an elusive concept; its exact boundaries are undefinable and its content varies according to specific factual contexts. The doctrine of a particular Case is not allowed to end with its enunciation, and an expression in an opinion yields later to the impact of facts unforseen. Thus, what is due process depends on circumstances varying with the Subject Matter and the necessities of the situation. The content of due process is a function of many variables,

including the nature of the right affected, the degree of damage caused by the proscribed condition or activity, and the availability of prompt remedial measures, it also depends, to some extent on which powers of government are being exercised and the purposes to be accomplished.

The Due Process Clause was intended to prevent the government from abusing its power or employing it as an instrument of oppression. Due process is not an end in itself; its Constitutional purpose is to protect a substantive interest to which an individual has a legitimate claim of entitlement. Another purpose of the Due Process Clause is to protect the people from the State, but not to ensure that the state protects them from each other.

**STATEMENT OF THE ISSUE**

Defendant asserts that his indictment as charged with Four counts charging the Defendant with Conspiracy and Possession of Heroin, violation of Title 21 U.S.C. section 841(a)(1) and (b)(1)(c) and section 846 and Title 18 U.S.C. section 2, a Class C Felony (Count I - III). Count IV charges the Defendant with Criminal Forfeiture, violation of Title 21 U.S.C. section 853, was completely vague and defective as it does not within itself charged in the indictment, Defendant with drug amount or quantity.

For Counsel to had further allowed Defendant to stipulate and sign a plea agreement with drug amount that involves approximately 198 grams that was not charged in the indictment, amounting to misrepresentation of facts was a violation of due process, 5th Amendment Right to the Constitution. Counsel negotiated

a boiler plate plea agreement on behalf of Defendant by not arguing on behalf of the Defendant for a **"Safety Valve"** nor securing the departure that would had further lowered defendant's sentence. Defendant was not charged with leadership role in the offense that would had automatically denied the Defendant a qualification for a **"Safety Valve"**.

The base offense level was taken from the premise of section 2D1.1(c)(7) which is 26, if the offense involved at least 100 grams of heroin but less than 400 grams of heroin. The government arrived to this calculation under false pretense by asserting the drugs involved were 198 grams of heroin.

The properties and personal items, e.g., assorted jewelry assets (ID 05-DEA-456796, Case Number CH-05-0006), valued at $39,976.00 issues at bar was under the false pretense by the government that the described properties and assorted jewelries were seized by Special Agents of the Drug Enforcement Administration (DEA) for forfeiture pursuant to Title 21, U.S.C. section 881 because the properties were used or acquired as a result of a violation of the Controlled Substance Act (Title 21, U.S.C. section 801 et seq).

Counsel William J. Murphy never made any effort contesting the forfeiture of the seized properties at the District Court. It was Defendant's right for Counsel to file claims for the seized properties by enumerating and identifying specific properties being claimed, stating the claimant's interest in such properties and made under oath, subject to penalty of perjury Title 18 U.S.C. section 983(a)(2)(c). Counsel's performance fell below the standard of the rules in the manual book of the American

Bar Association's Rules of Professional Conduct.

Defendant asserts that he was sent a letter of claims by the (DEA's) Forfeiture Department to contest and also pick up some of the seized properties and also procure personal items, the letter in question was forwarded to Counsel William J. Murphy. Record reflects that the properties in question which are mostly Real Estate in nature was procured and purchased through loans as the records would further reflect, that is not entered into evidence as (**"EXHIBITS"**) before this Honorable Court in this case at bar.

Records would reflect and show that Asset ID 05-DEA-456799 Case Number CH-05-0006, 1990 Mercedes Benz 300D was purchased through a bank loan. **"Records and Exhibits"** enclosed as attachments to this case at bar further reflects that the seized properties had no connection to illegal activities, all business ventures undertaken by Defendant were legal, tax records would show that Defendant was in no way involved in illegal activities tied to his business ventures. Due to the overzealousness and arrogance of the prosecutor, knowing quite well that Defendant was unlettered illiterate, who was unable to articulate himself, nor understand the legal reasoning and landscape in which he finds himself and what he the Defendant was up against, coupled with the Defendant's incompetent counsel whose performace and legal ethics were questionable.

After numerous visits by the Defendant's 17 years old son to Counsel William J. Murphy's office, Counsel made the Defendant's situation a laughing matter, taunting Defendant's son with the following. **"I would get you a job when you are**

**18 years of age,"** which the Defendant's son felt was very disrespectful given the fact his father, the Defendant's plight and incarceration. Instead of Counsel addressing the real issue that brought the Defendant's son to Counsel's office in regards to whether Counsel had filed claims to the properties in question.

Loan records in the **"Exhibits"** are tied like an umbilical cord to all the properties in question; e.g., the loan's date, re-payment plans and records, mortgage contracts, principals, bank statements, bank records, bank accounts, income tax filings and returns, land deeds documentations, etc. Defendant's business ventures were legal.

Defendant asserts that he was entrapped and coerced by his Counsel and the government to waive his rights and property rights under false pretense that the crime and drug proceeds were used in furtherance of a business venture by Defendant, that in itself created and opened a pandora's box to legal grounds for the government to file a forfeiture and seizure claim against the Defendant with a do-nothing Counsel sitting in the rear with his mouth sealed.

Counsel totally ignored Defendant's plight, never attempted whatsoever to follow through with the letter from the Forfeiture Claims Department, that Defendant sent Counsel, for Counsel to pursue and retrieve Defendant's properties. Defendant fears that time afforded him to contest the seizure of his properties might have run out and elapsed due to Counsel's negligence and refusal to pursue the issue at bar.

In the interest of justice, Defendant insists that this Honorable Court should investigate Counsel's ethical behavior,

the ulterior motives behind his actions of ineffectiveness, why the neglect of Defendant's properties rights, and why Counsel has not responded to Defendant and Defendant's family in regards to their property rights.

Defendant would like to enter into the court's record all the "**Exhibits**" in reference to disputed property claims at bar.

**ARGUMENT**

The facts that increase the maximum prison sentence for an offense must be found by a jury beyond a reasonable doubt, for they constitute "**element**" of the offense. **APPRENDI V NEW JERSEY**, 530 US 466, 530 (**2000**). The soundest and most realistic view of section 841 is that Congress intended drug quantity to constitute a sentencing factor, not an "**element**" of the crime under section 841: the statute is not susceptible to a contrary interpretation. **UNITED STATES V NORDBY**, 225 F 3d 1053, 1058 (9th Circuit, **2000**).

Defendants convicted of conspiracy under section 841 are sentenced pursuant to the provisions of section 841. Section 841 is separated into two primary sub-sections, 841(a) and 841(b). Section 841(a) is entitled "**Unlawful Acts**", stating that it is unlawful for any person to knowingly to manufacture, distribute or dispense or to possess with intent to do so, a controlled substance. Section 841(b) does not fix a penalty for such conduct. The indictment violates the fundamental notions of due process by failing to charge the offense and therefore, not withstanding the guilty plea, must be dismissed with prejudice.

It does not allege a particular or specific amount of drugs

other than to recite that portion of the statute dealing with amounts over 100 grams in the indictment and presentence investigation report. Under 21 U.S.C. 841, the amount of drugs alleged to have been involved in a conspiracy or in an offense must be charged. **UNITED STATES V COTTON**, 261 F 3d 397 (4th Cir 1999). The failure to allege the specific amount of drug involved constitutes a failure to charge a crime pursuant to these statutes, as the element of the offense (Citation). Concededly several courts of appeal have held that the recitation (in the indictment) of **"amount greater than 100 grams is a sufficiently specific statement of drug quantity to satisfy the Fifth Amendment."** The logic of the Fifth Amendment analysis coupled with the virtually **"statutory"** statutes of the sentencing guidelines, **MISTRETTA V UNITED STATES**, 488 US 361, render it constitutionally necessary to set forth a specific substantive conduct, to the extent that such a count would dictate a given sentencing guideline result and bracket. See **MISTRETTA V UNITED STATES**, 488 US 361 (1989) and **UNITED STATES V NORRIS**, 128 F Supp 2d 739, 741 (E.D.N.Y. 2001). In this light, the constitutional imperative for the indictment is to set forth a substantive count, so as to inform the defendant of the guideline level/bracket that conviction of that conduct would assign to him. The indictment failed such a litmus test.

The plea agreement stipulations were 500 times as serious as the crime charged in the indictment. To hold that these crimes may be punished on a finding by a judge based solely on a preponderance of the hearsay evidence is incosistent with the reasoning of **APPRENDI**, **BLAKELY**, and **BOOKER**. The defendant plead

guilty but did not admit to any specific amount of controlled substance. Even if there were such an admission, there would be insufficient grounds to hold that there was a waiver, that the indictment was insufficient on account of its failure to charge a specific drug quantity. See **UNITED STATES V MEACHUM, SUPRA**.

Before **APPRENDI**, **BLAKELY**, and **BOOKER**, the information supporting a court's quantity determination had to evince **"sufficient indicta of reliability,"** a standard the court was to apply **"rigorously"** **UNITED STATES V BROTHERS**, 75 F 3d at 848.

The federal drug sentencing statute, 18 U.S.C. section 841 and the commentary accompanying the guidelines **'Drug Quantity Table'** tie sentences containing a detectable amount of drug. The District Court sentenced the defendant on the basis of the weight of the entire package drug conspiracy. The leading case on this issue, **CHAPMAN V UNITED STATES**, 500 US 453, 461062 (**1991**). Emphasized Congress's **"market-oriented approach"** to drug sentencing.

Defendant submits that he was entitled to be sentenced advisory system as the court noted in **BOOKER** that both the merit decision as well as the remedy decisions must be applied retroactively to those on Direct Appeal - **BOOKER**, **et al**.

Structured errors have been described by the Court in **SULLIVAN V LOUISIANA**, 508 US 275 (**1993**), and other opinions as a **"defect affecting the framework within which the trial proceeds"** and an error that infects the entire trial process. The Supreme Court's reasoning in **SULLIVAN** articulates the absurdity of applying harmless error analysis to **BLAKELY** Sixth Amendment violations. The Court observed that the question that harmless error analysis

requires a reviewing Court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand......"

Once the proper role of an Appellate Court engaged in the [harmless error] inquiry is understood, the illogic of harmless error review in the present case becomes evident. There being no jury verdict beyond a reasonable doubt would have been rendered absent the constitutional error is utterly meaningless. There is no object, so to speak, upon which harmless error scrutiny can operate. The most a Court can conclude is that a jury would surely have found Defendant guilty beyond a reasonable doubt — not that the jury's actual finding of guilty beyond a reasonable doubt would surely not have been different absent the constitutional error. That is not enough. The Sixth Amendment requires more than Appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on Appeal; it requires an actual jury finding of guilty.

There was no jury finding beyond a reasonable doubt of aggravating factors warranting an enhanced sentence. It would be illogical to perform harmless error analysis in the absence of those findings. Instead of asking whether but for the error the findings would have been the same, the Court would be asking whether but for the error the findings would have been different. Such an analysis is the equivalent of speculating on the jury's verdict, which the Supreme Court has held is never to be allowed.

Defendant further asserts that in the interest of justice this Honorable Court should hold up his rulings on this issue

at bar in abeyance to the upcoming United States decision in cases relating to this issue, cases as follows: **CUNNINGHAM V CALIFORNIA**, US No. 05-6551, and **BURTON V WADDINGTON**, US No. 05-9222.

Defendant, **Pro-Se**, is entitled to be resentenced under Advisory System affording the Judge to hear all of the mitigating factors pursuant to 18 U.S.C. § 3553(a) that could affect the Court's judgement.

For these reasons Defendant asserts that this case at bar should be remanded and reviewed through evidentiary hearing and adhere to the opinion set forth.

November 5, 2006

Respectfully Submitted

Rafael Santos

**RAFAEL SANTOS**
#05654-070
LOW SECURITY CORRECTIONAL
INSTITUTION - ALLENWOOD
P.O. BOX 1000
WHITE DEER, PA 17887

**CERTIFICATE OF SERVICE**

I, Rafael Santos, Pro Se, hereby certify that copies of the foregoing: PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. SECTION 2255 was placed in the prison mailing system on November 5, 2006 to be sent to the United States District Court For the District of Rhode Island, 1 Exchange Terrace, Providence, Rhode Island 02903 and the United States Attoreny's Office, 50 Kennedy Plaza - 8th Floor, Providence, Rhode Island 02903, pre-paid first-class US mail.

Date: November 5, 2006

Respectfully Submitted

Rafael Santos
RAFAEL SANTOS